UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KELLY RENEE BLAUVELT o/b/o S.R.B.,

                                Plaintiff,

                -vs-

ANDREW M. SAUL, COMMISSIONER OF
SOCIAL SECURITY[1],

                                Defendant.

_____

DECISION AND ORDER

17-CV-6533-CJS

**APPEARANCES**

For Plaintiff:                              Ida M. Comerford, Esq.
                                            Kenneth R. Hiller, Esq.
                                            Law Offices of Kenneth Hiller, PPLC
                                            6000 North Bailey Avenue, Suite 1A
                                            Amherst, NY 14226
                                            (877) 236-7366

For the Commissioner:                       Michelle Lynn Christ. Esq.
                                            Social Security Administration
                                            Office of General Counsel
                                            26 Federal Plaza, Room 3904
                                            New York, NY 10278
                                            (212) 264-2098

                                            Dennis J. Canning, Esq.
                                            Office of the General Counsel
                                            Social Security Administration
                                            601 E. 12th Street, Room 965
                                            Kansas City, MO 64106
                                            (816) 936-5830

                                            Kathryn L. Smith, Esq.
                                            U.S. Attorney's Office
                                            100 State Street
                                            Rochester, NY 14614
                                            (585) 263-6760

---

[1] The president nominated Andrew M. Saul to be Commissioner of Social Security and the Senate confirmed his appointment on June 4, 2019. He is substituted pursuant to Fed. R. Civ. P. 25(d). The Clerk is directed to amend the caption to comply with this substitution.

## INTRODUCTION

**Siragusa, J.** Kelly Renee Blauvelt ("Plaintiff") has brought this action on behalf of her infant son ("S.R.B." or "Claimant") pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying S.R.B.'s application for Supplemental Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## PROCEDURAL STATUS

Plaintiff filed an application for SSI on January 8, 2014, alleging disability beginning October 11, 2009. R. 24.[2] The Social Security Administration denied her application on April 4, 2014. R. 24. Plaintiff filed a written request for a hearing on May 21, 2014, which hearing was held on October 14, 2015, via video teleconference. Plaintiff, S.R.B., and his grandmother appeared in Rochester, New York, while an administrative law judge ("ALJ") presided from Alexandria, Virginia. Neither Plaintiff nor S.R.B. was represented by counsel at the hearing.

The ALJ issued an unfavorable decision on January 5, 2016, finding that S.R.B. was not disabled. The Appeals Council denied review on June 15, 2017. Plaintiff filed the present action on August 7, 2017.

## STANDARD OF REVIEW

A determination by the Commissioner that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence" or when the decision is based upon legal error. *See* 42 U.S.C. § 405(g). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," a reviewing court may not substitute its judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir.2002). However, this deferential standard is not applied to the

---

[2] References are to pages in the Record of Proceedings filed on November 29, 2017, ECF No. 8.

Commissioner's application of the law. *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have [his] disability determination made according to the correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

## DISABILITY CLAIMS BY CHILDREN

To qualify as disabled under the Act, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). By regulation, the Commissioner has promulgated a three-step analysis to determine whether a child is eligible for SSI benefits based on a disability. *Encarnacion ex rel. George v. Astrue,* 586 F.3d 72, 75 (2d Cir. 2009) (citing 20 C.F.R. § 416.924, *et seq.*). First, the ALJ determines whether the child is engaged in "substantial gainful activity." 20 C.F.R. §§ 416.924(a), (b). Second, the ALJ considers whether the child has a "medically determinable impairment that is severe," in that it causes "more than minimal functional limitations." *Id*., § 416.924(c). Third, if a severe impairment is present, the ALJ must then consider whether the impairment "meets, medically equals," or "functionally equals" a presumptively disabling condition listed in the regulatory "Listing of Impairments." *Id*., § 416.924(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1.

The ALJ must evaluate limitations caused by a child's severe impairment or combination of impairments in the context of the following six domains of functioning:

(1) acquiring and using information;

(2) attending and completing tasks;

(3) interacting and relating with others;

(4) moving about and manipulating objects;

(5) caring for oneself; and

(6) the child's health and physical well-being.

20 C.F.R. § 416.926a(b)(1). "For a child's impairment to functionally equal a listed impairment, the impairment must 'result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.'" *Encarnacion*, 568 F.3d at 75 (quoting 20 C.F.R. § 416.926a(a)). An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). A "marked limitation" is an impairment that "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

## THE ALJ'S DECISION

The ALJ noted that S.R.B.'s date of birth was October 11, 2006, making him a preschooler when the application was filed, and, at the time of the decision, a school-age child. The ALJ determined that S.R.B. had not engaged in substantial gainful activity since the application date. R. 27. He further determined that S.R.B. has the following severe limitations: attention-deficit hyperactivity disorder (ADHD); obsessive compulsive disorder (OCD); and oppositional defiant disorder (ODD). R. 27.

The ALJ concluded that "contrary to allegations of disabling impairment, the record indicates symptoms largely resolved with medication[3] compliance. (Exhibit 2F/25)." R. 29. The ALJ relied on a January 2014 examination where S.R.B. was described as "polite, pleasant, and able to successfully complete his work," or if he refused to finish it, "instead of being disruptive" he simply "sat quietly." R. 29. The ALJ determined that,

> when examined on medication the claimant's motor activity, speech, affect, mood, and thought process were noted to be appropriate and within normal limits. (Exhibit 2F/34). Finally, his impulse control, insight, and judgment were characterized as fair. (Exhibit 2F/34). Similarly, his instructors and mother noted that his difficulties focusing, irritability, and hyperactivity resolved with treatment. (Exhibit 5F/2; 1E/5, 14; 5F/4).

R. 29. The ALJ afforded the opinion of a state agency medical consultant, M. Puttanniah, M.D., great weight. Dr. Puttanniah "opined that the claimant had no limitation in moving/manipulating objects and health/wellbeing with less than marked limitations in self-care, interacting with others, attending tasks, and acquiring information. (Exhibit 1A/4–5)." R. 29–30. The ALJ concluded that S.R.B. had no limitation in self-care. R. 30.

Turning to the domain of acquiring and using information, the ALJ determined that with medication, S.R.B. had no limitation in this functional area. At to this conclusion, he gave some weight to the opinion of Christopher Singer, M.S., a school psychologist, who determined that once S.R.B. began taking medication, "he was able to control himself, remain safe, and engage in learning. (Exhibit 1E/9)." R. 30.

In the domain of attending and completing tasks, the ALJ determined that S.R.B. had less than a marked limitation. In coming to this conclusion, the ALJ relied on Dr. Singer's assessment which noted that S.R.B.'s ability to transition to other tasks and avoid becoming

---

[3] The Record indicates that S.R.B. started a medication called methylphenidate on December 17, 2013. R. 311.

over involved in activities improved dramatically with medication. R. 32–33. The ALJ also relied on S.R.B.'s testimony "that he had no difficulty focusing on video games for 3 to 4 hours at a time." R. 33.

Regarding interacting and relating with others, the ALJ determined that S.R.B. had less than a marked limitation when medicated. For this, he relied on Dr. Singer's opinion and the fact that S.R.B. testified that he played with his neighbors for three to four hours a day. R. 34.

In moving about and manipulating objects, the ALJ determined that S.R.B. had no limitation. In this regard, it appears he relied heavily on S.R.B.'s own report of being able to play video games to come to this conclusion. R. 35.

For the domain of caring for yourself, the ALJ determined that because S.R.B. was well groomed, he had no limitation in this area. The ALJ rejected Dr. Singer's opinion that S.R.B. had obvious to serious problems in this domain. S.R.B.'s mother noted he was very good at attending to his self-care. R. 36.

Finally, about health and physical well-being, the ALJ determined S.R.B. has no limitation. For this, the ALJ relied on Dr. Singer's notations and stated further that even though the claimant is in the overweight range, "there is no indication that the claimant's weight results in any limitations." R. 36.

## DISCUSSION

Plaintiff argues that the ALJ did not reconcile evidence showing that S.R.B. met the functional equivalence of the listings regarding the domains of attending and completing tasks, interacting and relating with others, and caring for one self. Pl.'s Mem. of Law 15, Mar. 30, 2018, ECF No. 11-1. Plaintiff also contends that the ALJ "failed to obtain important school and medical records which were mentioned in the record," and seemed to rely on S.R.B.'s mother, "a woman said to have a low intellectual functioning." *Id*.; R. 305.

***Attending and Completing Tasks***

Turning to the domain of attending and completing tasks, Plaintiff contends that the ALJ gave no consideration to the fact that Plaintiff was in a 6:1:1 classroom with a designated aid who sat next to him throughout the day to help him stay focused on tasks, give him reminders about his behavior, and make sure that he remained in his seat. R. 184. Dr. Puttanniah, the non-examining state agency medical source to whom the ALJ gave great weight, wrote that in the domain of attending and completing tasks: "2 / 14 TQ: at times over involved in work; and obsessive, but dramatic improvement since using meds. Per mom, hyperactivity and difficulty focusing have resolved w /meds. 3 / 14 CE: attn /cone WNL." R. 70. Dr. Puttanniah found that S.R.B. had a less than marked limitation in this domain. As did the ALJ, Dr. Puttanniah relied on the mother's assessment, but did not reference the assessments of the teachers or school counselors. The Court finds that the ALJ erred in giving Dr. Puttanniah's assessment the greatest weight without analyzing the other evidence, especially from school sources.

Plaintiff points out that at the onset date in 2009, S.R.B. was in preschool and the ALJ made no mention of his frequent aggressiveness that caused the school to send him home. In fact, Plaintiff points out that the record contains no evidence from his preschool program at Head Start. Pl.'s Mem. of Law 18. Moreover, Plaintiff points out that the ALJ's decision makes no mention of the Keuka Lake evaluation, R. 343, or school psychologist Deanna L. Marconi-Rowley's report, R. 313.

Plaintiff further directs the Court's attention to the fact that the draft IEP formulated on May 1, 2014, after S.R.B. had been medicated for almost five months, required an aid to:

> Sit next to [S.R.B.] throughout the day to help him stay focused on the task at hand[.] Give reminders about behavior[.] Help him stay in his seat[.] Teach him strategies to help him cope when he does not get his own way[.] Help him play successfully with his peers[.] Provide choices to help improve problem solving

> skills[.] Provide appropriate words to use when he becomes upset[.] Provide appropriate coping strategies[.] Rubbing/massaging his back[.] Deep pressure on the shoulders[.] Using a brush (*i.e.* paint brush, small plastic brush) with soft strokes on forearms[.]

R. 261–62. The record also contains an assessment by one of his in-school counselors who saw S.R.B. individually once a week for 20 minutes, in a group two times a week for 30 minutes and checked in on him daily. R. 147. That counselor had known S.R.B. for three years. *Id*. For the domain of attending and completing tasks, that counselor wrote the following on the assessment form:

> Since [S.R.B.] has started his medication, this area has improved dramatically. At times [S.R.B.] may be over involved in his work and obsessive. He has a difficult time transitioning to new activities and working at an appropriate pace.

R. 149. One of the Commissioner's rules provides that a preschooler without an impairment "should usually be able to wait his turn and to change his activity when a caregiver or teacher says it is time to do something else." R. 32. Based on the counselor's note, however, even when medicated, S.R.B. was unable to meet this requirement.

A Pediatric Neurodevelopmental Evaluation by Stephen Bauer, M.D., dated October 23, 2014, was initiated over the summer of 2014. Dr. Bauer referred to a teacher report indicating that "[a]t times [S.R.B.] can be very 'irrational or aggressive' and he easily shuts down or blames others for problems." R. 477. Dr. Bauer also noted that S.R.B.'s "behaviors become more difficult off medication with him being more active and impulsive," R. 477, and that "[o]ver the years he is sometimes aggressive to mother. He has occasional 'breakdowns' where he becomes extremely angry with yelling, swearing, and sometimes aggression. Those can last over 20 minutes." R. 478. In his Recommendations, Dr. Bauer wrote:

> The recent change to a day treatment level of service there is appropriate and has reportedly been helpful. I suggest that he continue at that level of care, particularly since it will allow him to receive ongoing mental health supports including medication management through the school…. I suggest that he

continue on stimulant medication…. If he shows increasing difficulties with mood instability and highly activated behaviors or rages, it would be appropriate to consider treatment with a more behavior stabilizing medication…. Medication decisions should be made by the treating physicians in the day treatment program with input from teachers and family…. [S.R.B.] will continue to benefit from a careful behavior management plan at school using strategies shown to be effective for students with ADHD and oppositional defiant disorder but also addressing his anxiety and compulsive symptoms.

R. 481–82. The ALJ's decision makes no mention of Dr. Bauer's report. As the Honorable John T. Curtin of this Court observed in *Smith v. Massanari*, No. 00-CV-0402C, 2002 U.S. Dist. LEXIS 26503 (W.D.N.Y. Mar. 16, 2002):

[T]he Commissioner's regulations require the ALJ to consider the effects of a structured or highly supportive setting (such as the day treatment program at Baker Victory) on the claimant's functioning and, if the claimant's symptoms or signs are controlled or reduced by the structured environment, the ALJ is required to consider the claimant's functioning outside of the highly structured setting. 20 C.F.R. § 416.924c(d).

*Smith*, 2002 U.S. Dist. LEXIS 26503, at *17-18. The ALJ did not analyze the highly-structured environment of S.R.B.'s 6:1:1 classroom with an aid whose job was to:

Sit next to [S.R.B.] 5 x Weekly throughout the day to help him stay focused on the task at hand[.] Give reminders about behavior[.] Help him stay .in his seat[.] Teach him strategies to help him cope when he does not get his own way[.] Help him play successfully with his peers[.] Provide choices to help improve problem solving skills[.] Provide appropriate words to use when he becomes upset[.] Provide appropriate coping strategies[.]

R. 184 (IEP of Jul. 8, 2013–May 1, 2014, role of his aid).

Having reviewed the discrepancies in the ALJ's decision, the Court determines that regarding the domain of attending and completing tasks, the ALJ has not supported his conclusion with substantial evidence.

### Interacting and Relating with Others

Turning to the domain of interacting and relating with others, the ALJ disregarded Dr. Singer's opinion that S.R.B. had slight to serious problems relating with others. Instead, he relied on an opinion from a special education teacher, S.R.B.'s ability to play video games with

his neighbors, and his mother's testimony. R. 34. Plaintiff points out that the record does not contain the weekly treatment notes from the Ontario County Department of Mental Health, but the discharge summary of September 2013 from the Department related that S.R.B. "made statements about a voice in his head that tells him to 'be mean.'" R. 270. The discharge summary noted the following:

> The client's mother is seeking treatment for him due to hyperactivity and aggressiveness at home and at school. The client was evaluated by CPEP while at school on 7/27/12, after having a "week of tough behavior with physical aggression." The client reportedly was eating his breakfast that day at school and started stabbing his breakfast with his spoon handle. When told to stop by staff, he started hissing and making animal noises at the staff. He became aggressive and was "held" 3 times and staff requested a CPEP evaluation.

R. 270. On December 6, 2013, S.R.B. received an evaluation at the Clifton Springs Hospital & Clinic because of having bitten a school bus monitor. R. 413–14 ("Pt also states peers and the driver are 'mean' to him on the bus. Pt almost appears proud to have bit the bus monitor.").

During a psychiatric examination on January 10, 2014, after S.R.B. had been on medication for almost a month, his mother stated that her son "does go back to getting angry when med wears off." R. 305. The examiner, Inge de Weille, M.D., wrote, "[g]iven mom's own limitations in intellectual functioning, his teacher and school psychologist will be important for feedback about his progress." R. 305. The ALJ does not address Dr. Weille's exam.

A psychiatric evaluation by Wendy V. Proctor, PMHNP-BC,[4] at the Elmira Psychiatric Center on October 8, 2014, noted:

> [S.R.B.] is an almost 8 y/o Caucasian male who has had problems with behavior since age 3. He has been in Red Jacket since first grade, and has been having some problems with his behavior in that setting. He is being admitted to WFLDT 6:1:1 program for a more structured and therapeutic environment.

R. 499. At the time of that examination, S.R.B. had been on medication for almost ten months.

---

[4] According to the New York State Education Department, Office of the Professions, Ms. Proctor is a licensed nurse practitioner in psychiatry with prescriptive privilege.

R. 498.

Considering the errors that the Court has already encountered in reviewing the ALJ's decision, it finds that the decision is not supported by substantial evidence. Remand is required. Consequently, the Court need not continue its review of the ALJ's decision and will direct remand and an expedited rehearing.

## CONCLUSION

Based on its review of the Record, the Court grants Plaintiff's motion for judgment on the pleadings, ECF No. 11, and denies the Commissioner's cross-motion, ECF No. 15. This matter is remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g) for an expedited rehearing.

IT IS SO ORDERED.

DATED:     June 19, 2019
           Rochester, New York

                                   /s/ Charles J. Siragusa
                                   CHARLES J. SIRAGUSA
                                   United States District Judge